[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs bring this action in a three-count amended complaint dated April 9, 2002, alleging the following:
In Count 1 the plaintiff, Charles J. Minicucci, Jr. (hereinafter Charles) claims the defendant (hereinafter David) breached an agreement to provide an accounting for rents due from tenants, for funds held by their partnership and for an appropriate accounting. Charles and David were partners in a general partnership known as "Bolton Associates." The partnership owned a 24 unit apartment complex in the town of Hebron. When Charles and David decided to end their partnership they agreed that Charles would transfer his interest in Bolton Associates to David and they agreed to provide accountings to each other for both Bolton Associates and for another partnership known as Bolton Route 44, LLC, in which Charles was to acquire David's interest.
Count Two alleges that David, in addition to not providing an accounting, failed to make disbursements of income and/or profits due the plaintiff from the partnership.
Count 3 alleges that the other plaintiffs, Charles J. Minicucci III, James M. Minicucci, Donna Caliskan and Barbara Gouchoe, who are Charles's children and who had a partnership interest in Bolton Associates, suffered damages as a result of the assets of the partnership (namely the apartment complex) being transferred to David, thereby unlawfully depriving them of their interests in violation of § 34-338 of the General Statutes.
David has put forth, by special defense, that Charles and David, in writing, mutually released each other from any and all claims arising from the operation of partnerships in which they were both involved, including Bolton Associates. (A second special defense of res judicata has been abandoned — see defendant's post-trial memorandum at page 2). CT Page 4219
 Factual Background
Bolton Associates came into existence in approximately 1986. There were three partners originally, Charles Minicucci, Jr., David Minicucci and Richard Barry.
In 1993 Richard Barry notified the other two partners that he wished to exercise his right to a buyout of his partnership interest. (Exhibit 3). They agreed on a buyout price of $360,000. Approximately $70,000 of that amount was to compensate Barry for his partnership capital account.
Charles and David decided to transfer Barry's one-third interest to their children. David had three children and Charles had four. At the request of Charles and David a Transfer of Partnership Interest was prepared pursuant to which Barry transferred his one-third interest to the seven children thus each child's interest was one seventh of one third.
The children were not required to make any contribution to the partnership. In short David and Charles agreed to give their children a partnership interest in Bolton Associates as an investment for their future. It was understood that the children could not afford to buy into it themselves and that the partnership would be responsible for the payout to Barry, and would also continue to pay the operating expenses of Bolton Associates. Thereafter the business of Bolton Associates was carried on primarily by Charles and David, with the majority of the bookkeeping being done by Andrew Minicucci, who was David's son. It is clear that the children were told they were getting into an investment they were not required to pay for. Charles, in his testimony, said he and David wanted to get their "kids involved" without having to pay out any money "as long as we were in business." David's testimony was to the same effect.
As part of this arrangement created by Charles and David, a mortgage note was prepared in favor of Richard Barry in the amount of $360,000, which was signed by the seven children. The note was signed only by the children. Neither of the parents — Charles nor David — signed the note, nor was the Bolton Associates Partnership a signatory. It was a joint obligation of the children but nevertheless, as security for the note, a mortgage was given on the Bolton Associates property. (Exhibit 2.) The note called for monthly payments of $3704.40 with a balloon payment due in April 2001.
The monthly payments were made out of partnership funds. None of the children has contributed to those payments or otherwise put money into CT Page 4220 the partnership, at least until such later time (1999) as David called for them to pay the deficits in their capital accounts.
In 1997 the business relationship between Charles and David had become strained to the breaking point and David commenced a lawsuit against Charles. On June 30, 1999 that lawsuit was settled by a "Mutual Release and Settlement Agreement." (Exhibit 7.) They exchanged mutual releases and transferred interests in property to each other. Specifically, Charles transferred all of his right, title and interest in Bolton Associates to David. The agreement provided that David "shall make an accounting as to the finances of Bolton Associates as of June 30, 1999 within a reasonable time." (Exhibit 7, ¶ 6.) With the transfer by Charles of his one-third interest to David, David then held two thirds of the partnership with the seven children holding the remaining one third.
David testified that he asked the partnership accountant to prepare an accounting for Charles which, when it was done, indicated the children had negative capital accounts of approximately $20,000 each. He (David) was also facing the balloon payment on the note to Barry and, upon his accountant's advice, sent letters to all seven children demanding they bring their negative capital accounts current. In the alternative, he offered to assume the obligation to Barry and release the other partners from their capital account deficits in return for their agreement to dissolve the partnership. None of the four plaintiff children (Charles's children) responded to the three similar demand letters he sent. Thereafter, David and his three children (representing 80.3% of the partnership interest) voted to terminate and dissolve the partnership.
The plaintiffs argue that when David realized his brother's children still had a partnership interest even after their father had conveyed his interest to David, he devised a scheme to deprive them of their gifted interest in Bolton Associates, and further, that his action in dissolving the partnership and transferring the property to himself was a violation of the Uniform Partnership Act, and a violation of his fiduciary duty to all partners.
The defendant argues that Charles failed to prove he was not given an appropriate accounting, that Charles' son, Charles Minicucci III failed to prove his claim in count 2 and that David did not violate the UPA or his fiduciary duty to the partners.
 Discussion of Count 1
In this count, Charles alleges that David failed to provide him with an accounting for rent due, for funds held by the partnership prior to June CT Page 4221 30, 1999, and an appropriate accounting. The "mutual release and settlement agreement" between the parties (Exhibit 7) provided that Charles would transfer to David all his right, title and interest in Bolton Associates and that "within a reasonable time after said transfer David shall make an accounting as to the finances of Bolton Associates as of June 30, 1999."
The evidence refutes this claim. The partnership books, its financial and tax records, were kept by the accounting firm of Bernardi and Company. After the settlement agreement was executed David asked Bernardi and Company to provide an accounting to Charles. An accounting was apparently provided to Charles which appears to have raised some question in Charles' mind as to its accuracy. Charles, however, was given complete access to all the financial records of Bolton Associates including bank statements, invoices, deposit slips, etc. These records were kept by Andrew Minicucci who is David's son. Andrew was deposed by the plaintiffs and brought all the documents requested to the deposition. Because there was not enough time to go through all of them arrangements were made for the plaintiffs' attorney to review them at Andrew's place of business. The attorney spent a full day with Andrew who answered any questions the attorney had. At the end of the day the attorney was even allowed to take the records for his further review and copying if he chose to do so.
There was no evidence to indicate Charles or his attorney was denied access to any financial information. Nor was there any evidence to suggest that the information was false or incomplete.
In addition, Charles and David had already mutually released each other from any claims arising from the operation of Bolton Associates prior to June 30, 1999.
Simply, the plaintiff has failed to prove he was not given an accounting and the defendant is entitled to judgment in Count 1.
 Discussion of Count 2
In this Count it is alleged that David failed to make disbursements of income and/or profits to Charles Minicucci III due him from the partnership. The plaintiff falls short in his burden of proving the allegations in count 2.
Partnership tax returns were prepared annually from 1991 (Exhibits A through J) and every partner was sent a copy. A schedule K-1 was included in each return showing that partner's share of income, credits, deductions, etc. and the status of their capital accounts. CT Page 4222
This plaintiff (Charles' son) did, in fact, receive an annual accounting which showed the amount of "net income" being credited to his capital account. Since he at all times had a negative capital account he was not entitled to any distribution of profit.
The defendant is entitled to judgment in his favor in this count.
 Discussion of Count 3
In this Count, the four children of Charles allege that David violated § 34-338[1] of the Connecticut General Statutes when he took action to dissolve the partnership and then transferring the assets of the partnership to himself as trustee, thereby breaching his fiduciary duty to the said four plaintiffs.
Although count 3 does not specifically allege David improperly demanded that Charles' four children make payments to bring their capital accounts to a zero balance, that appears to be one of the main, if not the main point of contention and it is clearly a key issue in this case. (The plaintiffs referred to in this count are Charles' four children).
One of their arguments is that the entire debt of $360,000 was attributed to all seven children whereas it should have been attributed to all the partners including Charles and David, and further, the accounting techniques used by Bernardi and Company were designed for tax purposes and did not reflect the true intention of Charles and David, which was to bring their children into the deal without cost. It would appear to this Court that Charles intended to bring his children in and David intended the same for his children, that the partnership would pay the expenses and debts of the partnership, with the contributions made by each of the two parents proportionately reflected in their respective capital accounts.
In any event, it is standard accounting practice to establish a capital account for each partner of a partnership. This was testified to by Robert W. Falce, a certified public accountant with Bernardi and Company and Robert Pugh, a certified public accountant since 1955 who reviewed the accounts of the partnership and found no impropriety. See Moran,Shuster, Carignan, Knierim v. August, CV 93-0456076 S, Judicial District of Hartford/New Britain at New Britain, Dorsey, S.T.R. (5/2/94).
At the time the seven children entered the partnership they started out CT Page 4223 with a zero balance in their capital accounts. Their accountant, Ronald Walsh, CPA, testified they should have received a credit for Barry's capital account of over $70,000. The Court does not accept that as appropriate accounting. There was nothing to give them a credit against. They made no contribution to the partnership and although they signed the note to Barry, never made any payments toward it. Eventually David paid it off, including the final balloon payment. Nor did they contribute to the partnership in any other way.
It is significant that these four plaintiffs were sent copies of the partnership tax returns every year which clearly indicated their negative capital accounts were getting larger year by year. (And they received tax benefits in the preparation of their personal tax returns).
This Court finds nothing improper with the computation of the capital accounts of those plaintiffs. A partner's capital account in a partnership represents that partner's "contribution or investment in the partnership." August v. Moran, 50 Conn. App. 202, 206 (1998).
In late 1999 or early 2000, David sent demand letters to all seven children to bring their capital accounts to zero. (Exhibit 9.) None of Charles' four children responded in any way. The capital accounts of David's children were brought to zero, according to the testimony, by a loan from David and/or his wife.
In March 2000, David and his three children passed a resolution voting to terminate and dissolve Bolton Associates. This was done pursuant to the partnership agreement (Exhibit 1, paragraph 26 which reads as follows):
26. DISSOLUTION OR TERMINATION OF PARTNERSHIP.
The partners may terminate and dissolve the Partnership at any time by a written agreement signed and agreed to by a majority vote of all of the partners. Upon the dissolution of the Partnership for any reason, the assets of the Partnership shall be used first to pay all Partnership liabilities, obligations and liquidation expenses and second to the partners in accordance with their respective interests in the Partnership.
The partnership agreement authorized the dissolution at any time by a majority vote of all the partners. In this case it was an 80% vote of the partners.
The plaintiffs next argue the defendant should have sold the assets of CT Page 4224 the partnership, made an accounting and distributed any cash to the partners proportionately. Connecticut General Statutes § 34-378[2]
provides for the settlement of accounts between partners when a partnership is dissolved. The plaintiffs, in count 3 of the complaint, allege the defendant has breached his duty under § 34-338 of the general statutes but do not allege a violation of § 34-378.
In this case, the evidence showed that even if the property (partnership assets) were sold, there would not be sufficient money left to offset the liabilities.
Both sides in this dispute presented appraisal evidence as to the values of the apartment complex owned by the partnership. Both appraisers — Robert G. Stewart for the defendant and Richard Hagearty for the plaintiffs — are well qualified. The Court is of the opinion that Mr. Hagearty's appraisal overvalues the excess acreage as useable land while Mr. Stewart used a capitalization rate (13%) which is higher than reasonable. Making what the Court concludes to be reasonable adjustments to the appraisals based on all the appraisal evidence the fair market value is found to be approximately $800,000.
Connecticut General Statutes § 34-338 (c) defines David's obligations to the other partners in winding up the business of Bolton Associates:
(c) A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of law.
There was insufficient evidence which would enable the Court to find that David's action in winding up the partnership violated this statute as the plaintiffs have alleged in count 3.
If David had sold the property even at the market value of $940,000 (which was the plaintiffs' appraisal), there would not have been enough cash generated to provide a distribution to them. That would be so even if they had been credited with the full amount of Barry's capital account of approximately $70,000.
The testimony of Robert Falce, the partnership accountant, was persuasive and logical. The accountings were accurate, and even using a market value most favorable to the plaintiffs, there was no equity available for distribution to them (Charles' four children). In order for there to be any equity to distribute, the property would have to be worth CT Page 4225 more than $1,200,000, which is a far cry from the plaintiffs' appraisal of $940,000, and even a farther cry from the $800,000 market value found by the Court.
David's actions in winding up the affairs of the partnership are found to have been prudent and reasonable under the circumstances. He paid off the balance of the Barry mortgage, protecting his own 2/3 interest in the partnership. The four plaintiffs (Charles' children) did not have a positive equity interest in the partnership and were not negatively impacted by the manner in which the partnership was dissolved and the subsequent winding down of its affairs.
Judgment shall enter for the defendants in all three counts of the complaint.
Klaczak, JTR